**CLOSED, APPEAL**

# U.S. Bankruptcy Court
## Eastern District of New York (Central Islip)
## Bankruptcy Petition #: 8−04−87445−reg

|  |  |
|---|---|
| *Date filed:* | 11/23/2004 |
| *Date terminated:* | 08/02/2006 |
| *Date discharged:* | 03/22/2005 |
| *341 meeting:* | 01/04/2005 |
| *Deadline for objecting to discharge:* | 03/07/2005 |

*Assigned to:* Robert E. Grossman
Chapter 7
Voluntary
Asset

*Debtor*
**Barbara G Ross**
150 Main Street
Unit 1D
Islip, NY 11751
SUFFOLK−NY
SSN / ITIN: xxx−xx−8430

represented by **Michael G McAuliffe**
68 South Service Road
Suite 100
Melville, NY 11747
631 465−0044
Email: mgmlaw@optonline.net

*Trustee*
**Allan B. Mendelsohn**
Allan B. Mendelsohn, LLP
38 New Street
Huntington, NY 11743
(631)923−1625
Email: amendelsohn@amendelsohnlaw.com

represented by **Melanie A FitzGerald**
LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue
Wantagh, NY 11793
516−826−6500
Fax : 516−826−0222
Email: MFitzgerald@lhmlawfirm.com

**Holly R. Holecek**
LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue
Wantagh, NY 11793
(516) 826−6500
Fax : (516) 826−0222
Email: hrh@lhmlawfirm.com

**Salvatore LaMonica**
LaMonica Herbst and Maniscalco
3305 Jerusalem Ave
Wantagh, NY 11793
(516) 826−6500
Fax : (516) 826−0222
Email: sl@lhmlawfirm.com

*U.S. Trustee*
**United States Trustee**
560 Federal Plaza
Central Islip, NY 11722
631−715−7800

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 10/01/2015 | | 32 | Motion to Reopen Chapter 7 Case due to Discovery of Assets Fee Amount $ 260. Filed by Allan B. Mendelsohn on behalf of Allan B. Mendelsohn. Hearing scheduled for 11/9/2015 at 09:30 AM at Courtroom 860 (Judge |

| | | | |
|---|---|---|---|
| | | | Grossman), CI, NY. (Mendelsohn, Allan) (Entered: 10/01/2015) |
| 04/14/2016 | | 40 | Memorandum Decision based on the evidence in the record, no cause of action has accrued as of the petition date, and therefore, the settlement proceeds do not constitute property of the debtor's estate under the bankruptcy code and applicable cease law. Because reopening the case will serve no purpose, the motion is denied. (RE: related document(s)32 Reopen Chapter 7 Case Due to Discovery of Assets filed by Trustee Allan B. Mendelsohn). Signed on 4/14/2016 (jaf) (Entered: 04/14/2016) |
| 04/25/2016 | | 41 | Notice of Appeal to District Court. . Fee Amount $298 Filed by Holly R. Holecek on behalf of Allan B. Mendelsohn (RE: related document(s)40 Opinion/Decision for External Web Page). Appellant Designation due by 05/9/2016. (Holecek, Holly) (Entered: 04/25/2016) |
| 04/25/2016 | | | Receipt of Notice of Appeal(8–04–87445–reg) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number 14342298. Fee amount 298.00. (re: Doc# 41) (U.S. Treasury) (Entered: 04/25/2016) |
| 04/25/2016 | | 42 | Exhibit *A to Notice of Appeal* Filed by Holly R. Holecek on behalf of Allan B. Mendelsohn (RE: related document(s)41 Notice of Appeal filed by Trustee Allan B. Mendelsohn) (Holecek, Holly) (Entered: 04/25/2016) |
| 04/25/2016 | | 43 | Civil Cover Sheet Filed by Holly R. Holecek on behalf of Allan B. Mendelsohn (RE: related document(s)41 Notice of Appeal filed by Trustee Allan B. Mendelsohn). (Holecek, Holly) (Entered: 04/25/2016) |
| 04/25/2016 | | 44 | Affidavit/Certificate of Service Filed by Holly R. Holecek on behalf of Allan B. Mendelsohn (RE: related document(s)41 Notice of Appeal filed by Trustee Allan B. Mendelsohn, 42 Exhibit filed by Trustee Allan B. Mendelsohn, 43 Civil Cover Sheet filed by Trustee Allan B. Mendelsohn) (Holecek, Holly) (Entered: 04/25/2016) |
| 04/26/2016 | | 45 | Appeal Deficiency Notice (RE: related document(s)41 Notice of Appeal filed by Trustee Allan B. Mendelsohn) (sld) (Entered: 04/26/2016) |
| 04/26/2016 | | 46 | Notice to Parties of requirements, deadlines (RE: related document(s)41 Notice of Appeal filed by Trustee Allan B. Mendelsohn) (sld) (Entered: 04/26/2016) |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
In re:                                                                    Chapter 7
                                                                          Case No. 804-87445-REG
        BARBARA G. ROSS,                                                  **NOTICE OF MOTION**

                                               Debtor.
--------------------------------------------------------------------------x

      **PLEASE TAKE NOTICE,** that upon the annexed Motion of the Chapter 7 Trustee, the undersigned will move this Court for an Order, pursuant to 11 U.S.C. 350 and Federal Rules of Bankruptcy Procedure 5010 reopening the bankruptcy case.

      **PLEASE TAKE FURTHER NOTICE,** that this motion shall be returnable on the 9th **day of November, 2015 at 9:30 AM in the forenoon of that day,** before the Hon. Robert E. Grossman, or as soon thereafter as counsel can be heard, at the Long Island Federal Courthouse, 860 Federal Plaza, Central Islip, New York.

      **PLEASE TAKE FURTHER NOTICE,** that answering papers, if any, must comply with the Federal Rules of Bankruptcy Procedure, shall be filed with the Court and served upon and received by ALLAN B. MENDELSOHN, LLP, attorneys for the Trustee, at their offices located at 38 New Street, Huntington, New York 11743 so that they are received not later than three (3) business days before the hearing on the Motion.

      **PLEASE TAKE FURTHER NOTICE,** that the hearing may be adjourned from time to time without further notice other than the announcement of such adjournment in open Court.

Dated: Huntington, New York
      September 30, 2015
                                                    _____
                                                    ALLAN B. MENDELSOHN
                                                    ALLAN B. MENDELSOHN, LLP
                                                    38 New Street
                                                    Huntington, New York 11743
                                                    (631) 923-1625

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
In re:                                                                  Chapter 7
                                                                        Case No. 804-87445-REG

      BARBARA G. ROSS,

                                        Debtor.
-------------------------------------------------------------------------x

## MOTION TO RE-OPEN BANKRUPTCY CASE

      ALLAN B. MENDELSOHN, the former Chapter 7 Trustee, by and through his proposed

counsel, ALLAN B. MENDELSOHN, LLP, submits this Motion to Re-Open the above

captioned bankruptcy case and respectfully represents:

      1.      Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code on

November 23, 2004.

      2.      During the initial pendency of the case, the Trustee reached a settlement with the

Debtor by which she redeemed her residence from administration by the Trustee. The funds from

that settlement were distributed to creditors upon approval of the Trustee's Final Report. By

Order dated March 22, 2005, the Debtor received a discharge. The case was closed as an "Asset"

case by Final Decree which was issued on August 2, 2006.

      3.      The former Chapter 7 Trustee now seeks to re-open the Bankruptcy case pursuant

to 11 U.S.C. §350 and Federal Rules of Bankruptcy Procedure §5010 to administer an

undisclosed asset: to wit, a product liability claim for personal injuries sustained by BARBARA

G. ROSS which is in the process of being settled by her, and which claim she asserted resulted

from a pre-petition medical procedure which involved the implantation of a defective medical

device/product.

4

4.      The Trustee recently received communication from the attorneys who are representing Ms. Ross in the product liability action informing the Trustee for the first time of the pending settlement of the undisclosed pre-petition personal injury action for the sum of $105,172.26.

5.      Accordingly, by this Motion, the Trustee seeks to reopen this case to administer this undisclosed asset for the benefit of creditors.

6.      No application for the relief requested herein has previously been filed.

**WHEREFORE**, for the reasons stated herein, the former Trustee respectfully requests an Order granting the motion to re-open the above captioned bankruptcy case and for such other and further relief as the Court deems just and proper.

Dated: Huntington, New York
       September 30, 2015

_____
ALLAN B. MENDELSOHN
ALLAN B. MENDELSOHN, LLP
38 New Street
Huntington, New York 11743
(631) 923-1625

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x

In re:                                                    Chapter 7
                                                          Case No. 804-87445-REG

     BARBARA G. ROSS,                              **AFFIDAVIT OF MAILING**

                                      Debtor.

--------------------------------------------------------------------------x


STATE OF NEW YORK, COUNTY OF SUFFOLK          ss.:

     The undersigned, residing at the address set forth below, being duly sworn, deposes and says: that deponent is not a party to this action, and is over the age of eighteen (18) years.

     That on the date this affidavit was sworn to, deponent served a copy of the within Notice of Motion to Reopen Bankruptcy Case:

     Barbara G. Ross, 150 Main Street, Unit 1D, Islip, NY  11751

     Michael G. McAuliffe, 48 South Service Road, Melville, NY  11747

     Michael G. McAuliffe, 68 South Service Road, Suite 100, Melville, NY  11747

     Office of the United States Trustee, Long Island Federal Courthouse,
     560 Federal Plaza, Room 561, Central Islip, New York 11722-4437

CONTINUED ON LIST ATTACHED

the address(es) designated for that purpose, by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, first class mail, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.


                                                                     _____
                                                              Allan B. Mendelsohn
                                                              Kings Park, New York

Sworn to before me this
   _1st_ day of October, 2015


_____
Notary Public

MICHAEL J. O'SULLIVAN
Notary Public, State of New York
No. 02OS4985526
Qualified in Nassau County
Commission Expires August 19, 20 _17_

American Express Centurion Bank
Becket & Lee
POB 3001
Malvern PA 19355

American Express Travel Related Services
Becket & Lee
POB 3001
Malvern PA 19355

American Express Travel Related Svcs Co Inc Corp Ca
c/o Becket and Lee, LLP
P.O. Box 3001
Malvern, PA 19355-0701

American Express Travel Related Svcs Co
Inc Corp Card
c/o Becket and Lee, LLP
POB 3001
Malvern PA 19355-0701

American Express TRS Co Inc
Becket & Lee
POB 3001
Malvern PA 19355

AMEX
PO BOX 297871
FT LAUDERDALE, FL 33329

ARROW FINANCIAL SERVICE
5996 W TOUGHY AVENUE
NILES, IL 60714

Arrow Financial Services LLC
c/o Becket & Lee, LLP
POB 3001
Malvern PA 19355-0701

ASSET ACCEPTANCE LLC
PO BOX 2036
WARREN, MI 48090

Barbara G Ross
150 Main Street
Unit 1D
Islip, NY 11751

CAPITAL ONE BANK
PO BOX 85520
RICHMOND, VA 23285

CAVALRY PORTFOLIO SERVICE
4050 E COTTON CENTER BLVD
PHOENIX, AZ 85040

CBUSA SEARS
PO BOX 6189
SIOUX FALLS, SD 57117

CHASE
4915 INDEPENDENCE PKWY
TAMPA, FL 33634

COLLECTION RESOURCE SERVI
PO BOX 305
METAIRIE, LA 70004

Contact Resourse Services Inc
POB 625
Metairie LA70004

DISCOVER FINANCIAL
PO BOX 15316
WILMINGTON, DE 19850

GE PC RICHARDS
PO BOX 276
DAYTON, OH 45423

GRIMM COLLECTION
1677 2ND AVE SW
TUMWATER, WA 98512

INTERNAL REVENUE SERVICE
SPECIAL PROCEDURES FUNCT
PO BOX 60
BROOKLYN, NY 11201

Lamonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, NY 11793

MACYS
PO BOX 29116
SHAWNEE MISSION, KS 66201

Michael G McAuliffe
48 South Service Road
Melville, NY 11747

MICHAEL MC AULIFFE
48 SOUTH SERVICE ROAD
SUITE 102
MELVILLE, NY 11747

NCO
PO BOX 41466
PHILADELPHIA, PA 19101

NORDSTROM
PO BOX 6565
ENGLEWOOD, CO 80155

OFFICE MAX
PO BOX 9714
GRAY, TN 37615

PIER 1 IMPORTS
9111 DUKE BLVD
MASON, OH 45040

PIER 1 IMPORTS, INC.
C/O: CREDITORS BANKRUPTCY SERVICE
POB 740933
DALLAS TX 75374

SHERMAN ACQUISITIONS
PO BOX 10497
GREENVILLE, SC 29603

UNITED STATES ATTORNEY
CHIEF BANK LITIGATION
ONE PIERREPONT PLAZA
14TH FLOOR
BROOKLYN, NY 11201

Chapter 7
Case No.  804-87445-REG
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

      BARBARA G. ROSS,

                                                Debtor.

## MOTION TO RE-OPEN BANKRUPTCY CASE

ALLAN B. MENDELSOHN
ALLAN B. MENDELSOHN, LLP
38 New Street
Huntington, New York 11743
(631) 923-1625

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

In re:

                                                    Chapter 7 Case No.:
                                                    8–04–87445 (REG)


BARBARA G. ROSS,

                    Debtor,

------------------------------------------------------------------------ X


## <u>MEMORANDUM DECISION</u>

        Before the Court is the Trustee's motion ("Motion") seeking to reopen the bankruptcy case of Barbara G. Ross (the "Debtor") pursuant to 11 U.S.C. § 350(b) in order to administer settlement proceeds offered to the Debtor in connection with a medical device implanted in the Debtor and removed pre-petition.  The Debtor opposes the Motion, claiming that the settlement proceeds do not fit within the definition of property of the bankruptcy estate pursuant to 11 U.S.C. § 541.  The parties agree that neither the Debtor nor the medical community had knowledge that the device could cause the Debtor harm as of the date the petition was filed, and in fact the Debtor has yet to suffer physical harm from the device.  However, the Trustee argues that because the device was implanted pre-petition, any cause of action that may ultimately accrue based upon possible harm from the device, including the settlement proceeds, constitutes property of the estate under applicable statutory and case law.

        This case presents the Court with the challenge of applying the relevant statutes and case law in an environment that is constantly changing, as advances in science and technology permit the detection of risk of harm at earlier stages, often before any actual symptoms manifest themselves.  What standard should the Court adopt in determining whether a cause of action, based upon an unrecognized injury to a debtor, is property of the bankruptcy estate?  If the Trustee's

position is taken to its logical conclusion, the Court would be adopting a standard that would capture for the benefit of the estate any proceeds recovered by a debtor in his or her lifetime, so long as the right to recover the proceeds can be traced to a prepetition event.  In this case, determining whether the settlement proceeds are property of the estate is complicated by the fact that the Debtor suffered no injury prepetition or post-petition.  The settlement payment was made in exchange for the Debtor's agreement not to bring a suit in the future.   In cases such as this involving potential tort claims, the proper focus is on whether there was a viable cause of action the Debtor could bring under applicable law on the date the petition was filed.  If an action existed, regardless of what the Debtor knew, then that cause of action and all its proceeds would constitute property of the estate. If, however, as is true in this case, no cause of action had matured, it is irrelevant whether the Debtor ultimately develops an injury:  the cause of action resulting from that injury would not be property of the estate under § 541.

This analysis is consistent with applicable case law, including the seminal Supreme Court case *Segal v. Rochelle*, 382 U.S. 375, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966).  As of the date the petition was filed, the Debtor had no expectation that a device implanted in her and removed prepetition, for which no warning had ever been issued, would create a right to receive the settlement proceeds several years later.  Had the medical community been aware of any danger inherent in using the device pre-petition, and had the Debtor suffered an injury, the answer would be different.  Because the elements necessary to commence an action under state law were not present as of the date of the petition, the right to receive the settlement proceeds are not sufficiently rooted in the Debtor's prepetition past to warrant inclusion of the settlement proceeds in the Debtor's bankruptcy estate.

For the reasons detailed below, the Motion is denied.

## FACTS

In 1998, the Debtor underwent a surgical procedure to implant a transvaginal surgical mesh used to treat stress urinary incontinence (the "Device"). In 1999, the Debtor, for reasons not specified in the record, underwent another surgical procedure to remove the Device. On November 23, 2004 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 petition and did not report any assets pertaining to the Device in her bankruptcy schedules. On March 12, 2005, the Debtor received her discharge. On July 13, 2011, the FDA issued a public alert primarily regarding "serious complications" and health risks associated with transvaginal surgical mesh used to treat pelvic organ prolapse, which is different than the mesh implanted in the Debtor. In 2012, after viewing a television advertisement from which the Debtor first learned that the Device may be "defective," the Debtor retained mass tort counsel to seek recovery. Although the Debtor was not eligible to join the class action in connection with the Device, the Debtor was offered settlement proceeds in the amount of $105,172.26—which is funded by a surplus from the existing class action—in exchange for the Debtor's release of all present or future claims in connection with the Device. The parties did not specify whether the Debtor filed an action and provided few details regarding the class action. The record is devoid of evidence of any injury to the Debtor resulting from the Device, and according to the Debtor's mass tort counsel, the Device is still being used by the medical community.

On October 7, 2015, after the Debtor's mass tort counsel informed the Trustee of the settlement offer, the Trustee filed a motion to reopen the case to administer the settlement proceeds for the benefit of the Debtor's creditors. On November 4, 2015, the Debtor filed an objection to the Trustee's motion. On November 12, 2015 and January 27, 2016, the Trustee filed replies to the Debtor's objection. On February 17, 2016, the Debtor filed a supplemental opposition.

3

## **DISCUSSION**

### I.    *Standard to Reopen*

Pursuant to Rule 5010 of the Federal Rules of Bankruptcy Procedure, a debtor or other party in interest may make a motion to reopen a case.  Pursuant to section 350(b), "[a] case *may* be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  The statute's permissive language provides the Court with broad discretion to determine whether a party filed a motion to reopen in good faith or has demonstrated good cause.  *In re Olejnik*, No. 09–76714, 2010 WL 4366183 (Bankr.E.D.N.Y. Oct.28, 2010); *In re Meneses*, No. 05–86811, 2010 WL 813975 (Bankr.E.D.N.Y. Mar. 3, 2010); *In re Lowery*, 398 B.R. 512, 514 (Bankr.E.D.N.Y.2008).  The Court will only exercise its discretion to reopen a case in circumstances where relief may ultimately be afforded to a party, but not where reopening is futile or a waste of judicial resources.  *See In re Polynar Mardy & Marie D. Joseph*, No. 10–73819, 2011 WL 917545 (Bankr.E.D.N.Y. Mar. 15, 2011).

The Court must determine whether the Trustee has met his burden of establishing that there is sufficient "cause" under section 350(b).  The Bankruptcy Code does not define section 350(b)'s "cause."  *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir.1996).  The only purpose of reopening this case would be to administer the settlement proceeds for the benefit of the Debtor's creditors.  To determine whether cause exists, the Court must resolve the issue of whether the settlement proceeds are pre-petition assets that the Trustee is entitled to administer or whether the settlement proceeds belong to the Debtor, and therefore reopening the case would serve no purpose.

### II.    *Property of the Estate*

4

   *a.  Bankruptcy Code Section 541.*

   Upon the filing of a chapter 7 petition, a bankruptcy estate is created.  Subject to the limitations enumerated in subsections 541(b), (c), and (d), subsections 541(a)(1) and (a)(2) define the initial pool of property interests that forms the estate.  Section 541(a)(1) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate.  Section 541(a)(2) provides that spousal community property becomes property of the estate.  Sections 541(a)(3) through (a)(7) expand the estate property pool to include certain post-petition property, including inheritances, divorce settlements, and life insurance policies acquired within one hundred eighty days after the bankruptcy filing.  Section 541(a)(6) provides that property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate," but expressly excludes "earnings from services performed by an individual debtor after the commencement of the case."  Section 541(a)(7) is a catch-all that sweeps into the estate "[a]ny interest in property that the *estate* acquires after the commencement of the case."  11 U.S.C. § 541(a)(7) (emphasis added).  Congress enacted section 541(a)(7) in order (1) to clarify its intention that section 541 is an "all-embracing definition"; and (2) to ensure that property interests created with or by property of the estate are themselves property of the estate. *See* 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978).

   Section 541(a)(1)'s "property" is broad and encompasses "all legal or equitable interests of the debtor in property." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2312, 76 L.Ed.2d 515 (1983); *In re Jackson*, 593 F.3d 171, 176 (2d. Cir. 2010).  Legislative history indicates that section 541 is given a broad definition to include "all kinds of property, including tangible or intangible property . . . and all other forms of property."  H.R.Rep. No. 95–595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6323.  "Property" is "construed most

5

generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). Congress intended to bring "anything of value" that a debtor owns into the estate. H.R.Rep. No. 95–595, at 175–76.

"Property" includes causes of action possessed by a debtor at the time of the filing of the case. *Whiting Pools*, 462 U.S. at 205 n. 9; *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir.1989); *Jackson*, 593 F.3d at 176. The House and Senate reports on section 541(a)(1)'s language make clear that it was intended to bring a debtor's claims and causes of action into the estate. *See* H.R.Rep. No. 95–595, at 367. Even certain causes of action commenced post-petition may be included in the estate. 11 U.S.C. § 541(a)(7).

Although federal law determines when a debtor's interest in property is property of the bankruptcy estate, property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir.2006); *In re Duarte*, 492 B.R. 100, 103 (Bankr. E.D.N.Y. 2011). This Court looks to New York law to determine whether and to what extent the Debtor had an interest in the settlement proceeds when she filed her bankruptcy petition. *See Butner*, 440 U.S. at 55.

Even if New York law recognizes a property interest, section 541(a)(1) includes a temporal limit on the interests that become part of the estate, limiting interests only to those a debtor has "as of the commencement of the case." *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 119 (2d Cir.1991) (explaining that as a matter of law the trustee had no cause of action because none had accrued before bankruptcy); *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 759

(S.D.N.Y.2008). In other words, the Trustee administers only those property interests belonging to the Debtor when the petition is filed, subject to the aforementioned exceptions in section 541.

> b. *Segal v. Rochelle*

The Bankruptcy Code and legislative history do not specify when a claim is sufficiently matured "as of the commencement of the case" to constitute an "interest of the debtor in property." *Segal v. Rochelle* is the leading decision on such determination. 382 U.S. 375, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966). Indeed, section 541(a)'s legislative history expressly reflects Congress's intent to follow the *result* of *Segal.* H.R.Rep. No. 95–595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5868, 6323.

In *Segal,* the Supreme Court construed the term "property" under the Bankruptcy Act, the predecessor to the Bankruptcy Code, and held that a post-petition tax refund premised on pre-petition losses is property of the estate. The debtor in *Segal*, the Supreme Court explained, had an interest in the refund as of the petition date, and it was only the enjoyment of such interest that was postponed. Because only the passage of time was necessary for the debtor to claim the tax refund, the Supreme Court explained that the post-petition tax refund is "sufficiently rooted in the pre-bankruptcy past" to be considered property of the estate. Despite the broad reach given to "property," *Segal* does not expand property of the estate to include legal or equitable interests that a debtor acquires post-petition.

The Second Circuit, along with most other Circuits, recognizes the continued vitality of *Segal.  See, e.g.*, *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir.2008) ("Post-petition property will become property of the estate only if it is *sufficiently rooted* in the pre-bankruptcy past."); *Official Comm. Of Unsecured Creditors v. PSS Streamship Co., Inc. (In re Prudential Lines Inc.)*, 928 F.2d 565, 571 (2d Cir. 1991); *accord Beaman v. Shearin (In re*

*Shearin)*, 224 F.3d 346, 351 (4th Cir. 2000); *Underhill v. Huntington Nat'l Bank (In re Underhill)*, 579 F. App'x 480, 481 (6th Cir. 2014); *Fix v. First State Bank of Roscoe*, 559 F.3d 803, 809 (8th Cir. 2009); *Martinez v. Lincoln Gen. Ins. Co.*, 417 F. App'x 711, 712 (9th Cir. 2011); *Cook v. Baca*, 512 F. App'x 810, 820 (10th Cir. 2013) (citing *In re Dittmar*, 618 F.3d 1199, 1208 (10th Cir. 2010)).  Under the analysis set forth in *Segal*, courts generally employ a three-step process:

> (1) determine the extent to which the claim is rooted in the pre-bankruptcy past; (2) determine the extent to which it is entangled with the debtor's ability to make an unencumbered fresh start; and then (3) with both considerations in the balance, determine whether, in view of the purposes of the Bankruptcy Act (now the Bankruptcy Code), the claim is more properly categorized as prepetition property that should come into the estate or a post-petition asset that the Debtor should take free of the claims of pre-bankruptcy creditors . . . this analysis does not turn on whether, under state law, the claim had accrued as of the petition date.

*In re Borchert*, No. 04-65653, 2010 WL 153384, at *2-3 (Bankr. N.D.N.Y. Jan. 8, 2010); *Riccitelli v. Grasso (In re Riccitelli)*, 320 B.R. at 490–91.

       *c.  Application of Statute and Case Law*

Relying on *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), and section 541's language, courts examine whether, as of the petition date, a cause of action had accrued under applicable state law.  *See, e.g.*, *Swift v. Seidler (In re Swift)*, 198 B.R. 927 (Bankr.W.D.Tex.1996); *In re de Hertogh*, 412 B.R. 24 (Bankr. D. Conn. 2009); *Holstein v. Knopfler (In re Holstein)*, 321 B.R. 229 (Bankr.N.D.Ill.2005); *Underhill v. Huntington Nat'l Bank (In re Underhill)*, 579 Fed. Appx. 480 (6th Cir.2014); *In re Patterson*, Nos. 08–3025, 07–31735, 2008 WL 2276961 (Bankr.N.D.Ohio 2008); *Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218 (5th Cir. 2001).  "In common parlance, a right accrues when it comes into existence," *United States v. Lindsay*, 346 U.S. 568, 569, 74 S.Ct. 287, 98 L.Ed. 300 (1954), and the "standard rule" is that a claim accrues "when the plaintiff has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).  If any element of a cause of

action accrued post-petition, courts reason, the cause of action is not property of the estate, even if all of the *conduct* giving rise to the cause of action occurred pre-petition.  Consider a personal injury claim based on an incident occurring pre-petition and on injuries manifesting themselves post-petition—such a claim is not property of the estate because the injury, which is a requisite element of a personal injury cause of action, manifested itself only after the commencement of the bankruptcy case.

This analysis is consistent with the rationale of *Segal,* because no action that accrues post-petition can be "'sufficiently rooted in the pre-bankruptcy past'" of a debtor.  In re *Witko,* 374 F.3d 1040, 1043 (citing to *Segal*, 382 U.S. at 515).  As the Court of Appeals for the 11th Circuit correctly recognized, "[t]he Supreme Court did not allow the *Segal* trustee to assert more rights than the debtor had at the commencement of the case; it merely allowed the trustee to seek the interests existing, though still undetermined in quantity, at the time the debtor filed his petition."  *Id*. At 1043.  This analysis is also consistent with Second Circuit authority and section 541.  *See Bell v. Bell (In re Bell)*, 225 F.3d 203, 215 (2d Cir. 2000) ("Unlike pre-petition claims, claims which accrue to the debtor post-petition generally will not adhere to the estate and remain actionable by the debtor . . . property acquired post-petition by the debtor does not enter the estate; it remains the separate property of the debtor."); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir.1995) ("Whether the rights belong to the debtor . . . is a question of state law."); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 119 (2d Cir.1991) (explaining that a in order to determine whether a cause of action belongs to the bankruptcy estate, the court normally would determine whether the claim in question is able to withstand a motion to dismiss).  The Chapter 7 trustee, standing in the debtor's shoes, can maintain only those actions that the debtor could have *brought* prior to or when she filed her bankruptcy petition.  *See Hirsch*, 72 F.3d at 1093.

9

The Trustee cites to *In re Salander*, 450 B.R. 37 (Bankr S.D.N.Y. 2011), *In re Osborne*, 490 B.R. 75 (Bankr. S.D.N.Y. 2013) and *Stanley v. Community Bank, N.A.*, No. 8:08-CV-925 (GLS/RFT), 2009 WL 261333 (N.D.N.Y. Feb. 4, 2009) in support of his assertion that a claim need not have accrued prepetition in order to become property of a debtor's estate. *In re Salander* is factually distinguishable from the facts of this case. In *Salander*, a debtor sought to pursue a forgery claim against one of her creditors after the bankruptcy case was closed, and the Bankruptcy Court found that the claim was property of the estate despite the fact that her knowledge of the forgery was not clearly established prepetition. The Bankruptcy Court found that the claim was sufficiently rooted in the debtor's prepetition past, regardless of when she actually discovered the forgery. Because a claim of forgery required imputed, not actual discovery, the Bankruptcy Court put little emphasis on this element. *Id*. at *46.   In our case, there is no injury and no knowledge of wrongdoing, and these missing elements would not meet the standard adopted in *Salander*. To the extent that the *Salander* Court determined that all of the elements need not have accrued prepetition, the Court respectfully disagrees for the reasons outlined above.

Similarly, *Stanley v. Community Bank, N.A*. involved a debtor who brought a lawsuit against several banks based on allegations that the banks were complicit with her husband's fraud and forgery, which occurred prepetition.  The debtor claimed to have discovered the misconduct post-petition, and the Bankruptcy Court concluded that the debtor's knowledge, whether prepetition or post-petition, would not affect the status of the claim as one belonging to her estate. *Id*. at *3.  As in *Salander*, knowledge could be actual or imputed, and there is no indication that the Court in *Salander* would find that despite the lack of injury and damages prepetition, the Debtor's right to the settlement proceeds is sufficiently rooted in her prepetition past to render it property of her bankruptcy estate.  Finally, *In re Osborne* involved repeat filers who did not

10

disclose a multi-million dollar malpractice suit against the debtors' former bankruptcy attorneys. The Court in *Osborne* does not discuss the elements of the malpractice suit, other than to state that although a cause of action must have existed at the time of filing, all of the elements need not have accrued under applicable law. *Id.*, 490 B.R. at 83. To the extent *Osborne* stands for the proposition that accrual of a cause of action can be differentiated from the existence of a cause of action, the Court declines to follow *Osborne*.

### *Analysis*

Because section 541(a)(1) dictates that property of the estate includes "all legal or equitable interests of the debtor" that exist "as of the commencement of the case," the question is generally temporal: when did the debtor acquire a legal interest in the settlement proceeds?  In this case, the only events that took place pre-petition were the implant and removal of the Device.  Did implanting the Device, standing alone, vest rights in the Debtor to receive the settlement proceeds as of the Petition Date?

Under New York law, a tort claim does not accrue until the debtor sustains an injury as a result of the complained of act or omission.  *Berkshire Life Ins. Co. of Am. v. Ochs*, No. 06CV0657DRHWDW, 2009 WL 799956, at *4 (E.D.N.Y. Mar. 24, 2009) (explaining that "a tort cause of action cannot accrue until an injury is sustained").  So long as the required element of injury is hypothetical, the debtor has no legally cognizable cause of action, and thus has no property interest and any asserted claim would be subject to dismissal as unripe for adjudication.

While there is no dispute that the Device was implanted and removed prepetition, the record is barren of any evidence that she suffered any injury prepetition.  Mere removal of the Device does not, standing alone, imply that removal is the product of an injury.  In fact, the Debtor's affidavit suggests that she first learned that she may have a claim post-petition as a result

of viewing a television advertisement.  In order to have an interest in a tort cause of action under New York law, "injury" requires more than mere exposure to a defective product.  *Gilks v. Olay Co., Inc.*, 30 F. Supp.2d 438, 443 (S.D.N.Y. 1998).

Even of the Court were to consider a claim based on failure to warn, no such claim had accrued as of the Petition Date.  In order to maintain a failure to warn claim under New York law, a claimant must show "(1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses which it knew or should have known; and (3) that failure to do so was the proximate cause of harm."  *Colon ex. Re. Molina v. BIC USA, Inc.*, 199 F. Supp.2d 53, 84 (S.D.N.Y. 2001). Because there was no harm to the Debtor prepetition, a failure to warn claim did not exist.

 If the Court were to adopt the Trustee's analysis, pre-petition exposure, without more, would be sufficient to create a pre-petition "legal or equitable interest."  Such analysis would expand property of the estate to include any interest so long as a trustee can tie such interest to a debtor's "pre-bankruptcy past" and would transform section 341 meetings of creditors into health examinations.  Opportunistic trustees would be scrambling to latch onto every possible claim that may someday arise, however attenuated.

One aspect of the Trustee's argument that  Court agrees with is that a *debtor's* lack of knowledge—distinct from the medical community's knowledge—of a cause of action is irrelevant for the purpose of determining ownership in a bankruptcy proceeding.  The proposition that a debtor's knowledge is required conflates the principles underlying discovery rules, statutes of limitation, and accrual of causes of action.  *See generally State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 796 (5th Cir. 1997).  Setting the clock in motion—vis-à-vis triggering the statute of limitations—is influenced by concepts such as the discovery rule under which the statute

12

of limitations is tolled until an injured party "discovers" or should have discovered an injury. Put differently, statutes of limitation often begin to run on a date other than the date on which the cause of action accrued. However, if a debtor is not aware of any injury, and there is no recognition in the medical community that a product used by a debtor pre-petition could be harmful, there is no prepetition cause of action to which a trustee can claim for the benefit of the estate.

*Substance of the Settlement*

Finally, the settlement proceeds are not generated from the Debtor's commencement of an adversary proceeding against a defendant. Intuitively, willingness to pay the Debtor arguably implies that a cause of action accrued. This, however, fails to account for the substance of the settlement. The settlement in this case requires the Debtor would release all possible claims, present and future regarding the Device. In other words, the Debtor would promise not to sue, regardless of whether the Debtor presently has or ever will have a claim. *See Blacks Law Dictionary* (10th ed. 2014) (defining "release" as "the act of giving up a right or claim to the person against whom it could have been enforced"). Assuming the Debtor was not injured as of the commencement of the case, as the record appears to indicate, the settlement proceeds are offered in exchange for the Debtor's pre-injury release to absolve others in advance of any liability and to transfer the risk of any such liability to the Debtor.

That the settlement proceeds were offered in connection with a class action—especially a class action for which the Debtor was not eligible—bolsters the foregoing. It is well established that releases and "settlement agreements are creatures of private contract law" and, in this case, the product of a "deliberate decision to bind themselves according to mutually agreed-upon terms without engaging in any substantive adjudication of the underlying causes of action." *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 312 (3d Cir. 2011). In an effort to avoid protracted present

13

and future litigation, class action defendants seek to "achieve 'global peace' by obtaining releases from all those who might wish to assert claims, *meritorious or not*," which is a "valid, and valuable incentive."  *Id.* at *310* (emphasis added).  The settlement policy is so important that those with meritless claims "barred under applicable state law" are generally included in classes to receive settlement proceeds.  *Id.* ("We need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action.").  In fact, the Second Circuit is one of a minority of circuits to approve settlements when a "court believes that [the underlying] claims may be *meritless*."  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243-44 (2d Cir. 2012) (emphasis added).  Contrary findings "would doom the class certification process from the outset" and those "ultimately excluded would no doubt go right back into court to continue to assert their claims," defeating the purpose of class action defendants obtaining an assurance that they have "extinguished every claim from every potential plaintiff."  *Id.*

14

Based on the evidence in the record, no cause of action had accrued as of the Petition Date, and therefore, the settlement proceeds do not constitute property of the Debtor's estate under the Bankruptcy Code and applicable case law.   Because reopening the case will serve no purpose, the Motion is denied.


## CONCLUSION

For the foregoing reasons, the Motion is denied.   An order consistent with this Memorandum Decision shall be entered forthwith.



**Dated: Central Islip, New York**
**April 14, 2016**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

                                         Chapter 7

BARBARA G. ROSS,                       Case No.: 8-04-87445-reg

               Debtor.
-------------------------------------------------------X

## NOTICE OF APPEAL

      Allan B. Mendelsohn, the former Chapter 7 Trustee of the estate of Barbara G. Ross, by his counsel, respectfully appeals under 28 U.S.C. § 158(a) from the MEMORANDUM DECISION entered in the above captioned case on April 14, 2016 [Docket No. 40].

      The names of the parties to the MEMORANDUM DECISION and the names, address, and telephone number of their counsel are as follows:

| Former Debtor: | Former Trustee: |
|---|---|
| Barbara G. Ross | Allan B. Mendelsohn |
| 150 Main Street, Unit 1D | Allan B. Mendelsohn, LLP |
| Islip, New York 11751 | 38 New Street |
| | Huntington, New York 11743 |
| | |
| Counsel to Former Debtor: | Counsel to Former Trustee: |
| Michael G McAuliffe, Esq. | LaMonica Herbst & Maniscalco, LLP |
| 68 South Service Road, Suite 100 | 3305 Jerusalem Avenue, Suite 201 |
| Melville, New York 11747 | Wantagh, New York 11793 |
| Telephone: (631) 465-0044 | Telephone: (516) 826-6500 |

                         Respectfully submitted,

Dated: April 25, 2016
        Wantagh, New York

                         **LaMONICA HERBST & MANISCALCO, LLP**
                         Counsel to Allan B. Mendelsohn, Former Chapter 7 Trustee

            By:     *s/ Salvatore LaMonica*
                    Salvatore LaMonica, Esq.
                    Holly R. Holecek, Esq.
                    3305 Jerusalem Avenue
                    Wantagh, New York 11793
                    Telephone: (516) 826-6500

# **EXHIBIT A TO NOTICE OF APPEAL**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

In re:

                                                   Chapter 7 Case No.:
                                                 8–04–87445 (REG)

BARBARA G. ROSS,

                        Debtor,

----------------------------------------------------------------------- X

## <u>MEMORANDUM DECISION</u>

       Before the Court is the Trustee's motion ("Motion") seeking to reopen the bankruptcy case of Barbara G. Ross (the "Debtor") pursuant to 11 U.S.C. § 350(b) in order to administer settlement proceeds offered to the Debtor in connection with a medical device implanted in the Debtor and removed pre-petition.  The Debtor opposes the Motion, claiming that the settlement proceeds do not fit within the definition of property of the bankruptcy estate pursuant to 11 U.S.C. § 541.  The parties agree that neither the Debtor nor the medical community had knowledge that the device could cause the Debtor harm as of the date the petition was filed, and in fact the Debtor has yet to suffer physical harm from the device.  However, the Trustee argues that because the device was implanted pre-petition, any cause of action that may ultimately accrue based upon possible harm from the device, including the settlement proceeds, constitutes property of the estate under applicable statutory and case law.

       This case presents the Court with the challenge of applying the relevant statutes and case law in an environment that is constantly changing, as advances in science and technology permit the detection of risk of harm at earlier stages, often before any actual symptoms manifest themselves.  What standard should the Court adopt in determining whether a cause of action, based upon an unrecognized injury to a debtor, is property of the bankruptcy estate?  If the Trustee's

position is taken to its logical conclusion, the Court would be adopting a standard that would capture for the benefit of the estate any proceeds recovered by a debtor in his or her lifetime, so long as the right to recover the proceeds can be traced to a prepetition event.   In this case, determining whether the settlement proceeds are property of the estate is complicated by the fact that the Debtor suffered no injury prepetition or post-petition.  The settlement payment was made in exchange for the Debtor's agreement not to bring a suit in the future.   In cases such as this involving potential tort claims, the proper focus is on whether there was a viable cause of action the Debtor could bring under applicable law on the date the petition was filed.  If an action existed, regardless of what the Debtor knew, then that cause of action and all its proceeds would constitute property of the estate. If, however, as is true in this case, no cause of action had matured, it is irrelevant whether the Debtor ultimately develops an injury:  the cause of action resulting from that injury would not be property of the estate under § 541.

This analysis is consistent with applicable case law, including the seminal Supreme Court case *Segal v. Rochelle*, 382 U.S. 375, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966).  As of the date the petition was filed, the Debtor had no expectation that a device implanted in her and removed prepetition, for which no warning had ever been issued, would create a right to receive the settlement proceeds several years later.  Had the medical community been aware of any danger inherent in using the device pre-petition, and had the Debtor suffered an injury, the answer would be different.  Because the elements necessary to commence an action under state law were not present as of the date of the petition, the right to receive the settlement proceeds are not sufficiently rooted in the Debtor's prepetition past to warrant inclusion of the settlement proceeds in the Debtor's bankruptcy estate.

For the reasons detailed below, the Motion is denied.

## FACTS

In 1998, the Debtor underwent a surgical procedure to implant a transvaginal surgical mesh used to treat stress urinary incontinence (the "Device"). In 1999, the Debtor, for reasons not specified in the record, underwent another surgical procedure to remove the Device. On November 23, 2004 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 petition and did not report any assets pertaining to the Device in her bankruptcy schedules. On March 12, 2005, the Debtor received her discharge. On July 13, 2011, the FDA issued a public alert primarily regarding "serious complications" and health risks associated with transvaginal surgical mesh used to treat pelvic organ prolapse, which is different than the mesh implanted in the Debtor. In 2012, after viewing a television advertisement from which the Debtor first learned that the Device may be "defective," the Debtor retained mass tort counsel to seek recovery. Although the Debtor was not eligible to join the class action in connection with the Device, the Debtor was offered settlement proceeds in the amount of $105,172.26—which is funded by a surplus from the existing class action—in exchange for the Debtor's release of all present or future claims in connection with the Device. The parties did not specify whether the Debtor filed an action and provided few details regarding the class action. The record is devoid of evidence of any injury to the Debtor resulting from the Device, and according to the Debtor's mass tort counsel, the Device is still being used by the medical community.

On October 7, 2015, after the Debtor's mass tort counsel informed the Trustee of the settlement offer, the Trustee filed a motion to reopen the case to administer the settlement proceeds for the benefit of the Debtor's creditors. On November 4, 2015, the Debtor filed an objection to the Trustee's motion. On November 12, 2015 and January 27, 2016, the Trustee filed replies to the Debtor's objection. On February 17, 2016, the Debtor filed a supplemental opposition.

3

## **DISCUSSION**

### *I.      Standard to Reopen*

Pursuant to Rule 5010 of the Federal Rules of Bankruptcy Procedure, a debtor or other party in interest may make a motion to reopen a case.  Pursuant to section 350(b), "[a] case *may* be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  The statute's permissive language provides the Court with broad discretion to determine whether a party filed a motion to reopen in good faith or has demonstrated good cause.  *In re Olejnik*, No. 09–76714, 2010 WL 4366183 (Bankr.E.D.N.Y. Oct.28, 2010); *In re Meneses*, No. 05–86811, 2010 WL 813975 (Bankr.E.D.N.Y. Mar. 3, 2010); *In re Lowery*, 398 B.R. 512, 514 (Bankr.E.D.N.Y.2008).  The Court will only exercise its discretion to reopen a case in circumstances where relief may ultimately be afforded to a party, but not where reopening is futile or a waste of judicial resources. *See In re Polynar Mardy & Marie D. Joseph*, No. 10–73819, 2011 WL 917545 (Bankr.E.D.N.Y. Mar. 15, 2011).

The Court must determine whether the Trustee has met his burden of establishing that there is sufficient "cause" under section 350(b).  The Bankruptcy Code does not define section 350(b)'s "cause."  *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir.1996). The only purpose of reopening this case would be to administer the settlement proceeds for the benefit of the Debtor's creditors.  To determine whether cause exists, the Court must resolve the issue of whether the settlement proceeds are pre-petition assets that the Trustee is entitled to administer or whether the settlement proceeds belong to the Debtor, and therefore reopening the case would serve no purpose.

### *II.      Property of the Estate*

4

   a. *Bankruptcy Code Section 541.*

Upon the filing of a chapter 7 petition, a bankruptcy estate is created.  Subject to the limitations enumerated in subsections 541(b), (c), and (d), subsections 541(a)(1) and (a)(2) define the initial pool of property interests that forms the estate.  Section 541(a)(1) provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate.  Section 541(a)(2) provides that spousal community property becomes property of the estate.  Sections 541(a)(3) through (a)(7) expand the estate property pool to include certain post-petition property, including inheritances, divorce settlements, and life insurance policies acquired within one hundred eighty days after the bankruptcy filing.  Section 541(a)(6) provides that property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate," but expressly excludes "earnings from services performed by an individual debtor after the commencement of the case."  Section 541(a)(7) is a catch-all that sweeps into the estate "[a]ny interest in property that the *estate* acquires after the commencement of the case."  11 U.S.C. § 541(a)(7) (emphasis added).  Congress enacted section 541(a)(7) in order (1) to clarify its intention that section 541 is an "all-embracing definition"; and (2) to ensure that property interests created with or by property of the estate are themselves property of the estate.  *See* 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978).

Section 541(a)(1)'s "property" is broad and encompasses "all legal or equitable interests of the debtor in property." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203, 103 S.Ct. 2312, 76 L.Ed.2d 515 (1983); *In re Jackson*, 593 F.3d 171, 176 (2d. Cir. 2010).  Legislative history indicates that section 541 is given a broad definition to include "all kinds of property, including tangible or intangible property . . . and all other forms of property."  H.R.Rep. No. 95–595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6323.  "Property" is "construed most

5

generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966). Congress intended to bring "anything of value" that a debtor owns into the estate. H.R.Rep. No. 95–595, at 175–76.

"Property" includes causes of action possessed by a debtor at the time of the filing of the case. *Whiting Pools*, 462 U.S. at 205 n. 9; *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir.1989); *Jackson*, 593 F.3d at 176. The House and Senate reports on section 541(a)(1)'s language make clear that it was intended to bring a debtor's claims and causes of action into the estate. *See* H.R.Rep. No. 95–595, at 367. Even certain causes of action commenced post-petition may be included in the estate. 11 U.S.C. § 541(a)(7).

Although federal law determines when a debtor's interest in property is property of the bankruptcy estate, property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *Musso v. Ostashko*, 468 F.3d 99, 105 (2d Cir.2006); *In re Duarte*, 492 B.R. 100, 103 (Bankr. E.D.N.Y. 2011). This Court looks to New York law to determine whether and to what extent the Debtor had an interest in the settlement proceeds when she filed her bankruptcy petition. *See Butner*, 440 U.S. at 55.

Even if New York law recognizes a property interest, section 541(a)(1) includes a temporal limit on the interests that become part of the estate, limiting interests only to those a debtor has "as of the commencement of the case." *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 119 (2d Cir.1991) (explaining that as a matter of law the trustee had no cause of action because none had accrued before bankruptcy); *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 759

(S.D.N.Y.2008).  In other words, the Trustee administers only those property interests belonging to the Debtor when the petition is filed, subject to the aforementioned exceptions in section 541.

### b.   *Segal v. Rochelle*

The Bankruptcy Code and legislative history do not specify when a claim is sufficiently matured "as of the commencement of the case" to constitute an "interest of the debtor in property." *Segal v. Rochelle* is the leading decision on such determination.  382 U.S. 375, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966).  Indeed, section 541(a)'s legislative history expressly reflects Congress's intent to follow the *result* of *Segal.*  H.R.Rep. No. 95–595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5868, 6323.

In *Segal,* the Supreme Court construed the term "property" under the Bankruptcy Act, the predecessor to the Bankruptcy Code, and held that a post-petition tax refund premised on pre-petition losses is property of the estate.  The debtor in *Segal*, the Supreme Court explained, had an interest in the refund as of the petition date, and it was only the enjoyment of such interest that was postponed.  Because only the passage of time was necessary for the debtor to claim the tax refund, the Supreme Court explained that the post-petition tax refund is "sufficiently rooted in the pre-bankruptcy past" to be considered property of the estate.  Despite the broad reach given to "property," *Segal* does not expand property of the estate to include legal or equitable interests that a debtor acquires post-petition.

The Second Circuit, along with most other Circuits, recognizes the continued vitality of *Segal.  See, e.g.*, *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir.2008) ("Post-petition property will become property of the estate only if it is *sufficiently rooted* in the pre-bankruptcy past."); *Official Comm. Of Unsecured Creditors v. PSS Streamship Co., Inc. (In re Prudential Lines Inc.)*, 928 F.2d 565, 571 (2d Cir. 1991); *accord Beaman v. Shearin (In re*

*Shearin)*, 224 F.3d 346, 351 (4th Cir. 2000); *Underhill v. Huntington Nat'l Bank (In re Underhill)*, 579 F. App'x 480, 481 (6th Cir. 2014); *Fix v. First State Bank of Roscoe*, 559 F.3d 803, 809 (8th Cir. 2009); *Martinez v. Lincoln Gen. Ins. Co.*, 417 F. App'x 711, 712 (9th Cir. 2011); *Cook v. Baca*, 512 F. App'x 810, 820 (10th Cir. 2013) (citing *In re Dittmar*, 618 F.3d 1199, 1208 (10th Cir. 2010)).  Under the analysis set forth in *Segal*, courts generally employ a three-step process:

> (1) determine the extent to which the claim is rooted in the pre-bankruptcy past; (2) determine the extent to which it is entangled with the debtor's ability to make an unencumbered fresh start; and then (3) with both considerations in the balance, determine whether, in view of the purposes of the Bankruptcy Act (now the Bankruptcy Code), the claim is more properly categorized as prepetition property that should come into the estate or a post-petition asset that the Debtor should take free of the claims of pre-bankruptcy creditors . . . this analysis does not turn on whether, under state law, the claim had accrued as of the petition date.

*In re Borchert*, No. 04-65653, 2010 WL 153384, at *2-3 (Bankr. N.D.N.Y. Jan. 8, 2010); *Riccitelli v. Grasso (In re Riccitelli)*, 320 B.R. at 490–91.

        *c.   Application of Statute and Case Law*

Relying on *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), and section 541's language, courts examine whether, as of the petition date, a cause of action had accrued under applicable state law.  *See, e.g.*, *Swift v. Seidler (In re Swift)*, 198 B.R. 927 (Bankr.W.D.Tex.1996); *In re de Hertogh*, 412 B.R. 24 (Bankr. D. Conn. 2009); *Holstein v. Knopfler (In re Holstein)*, 321 B.R. 229 (Bankr.N.D.Ill.2005); *Underhill v. Huntington Nat'l Bank (In re Underhill)*, 579 Fed. Appx. 480 (6th Cir.2014); *In re Patterson*, Nos. 08–3025, 07–31735, 2008 WL 2276961 (Bankr.N.D.Ohio 2008); *Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218 (5th Cir. 2001).  "In common parlance, a right accrues when it comes into existence," *United States v. Lindsay*, 346 U.S. 568, 569, 74 S.Ct. 287, 98 L.Ed. 300 (1954), and the "standard rule" is that a claim accrues "when the plaintiff has a complete and present cause of action."  *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).  If any element of a cause of

action accrued post-petition, courts reason, the cause of action is not property of the estate, even if all of the *conduct* giving rise to the cause of action occurred pre-petition.  Consider a personal injury claim based on an incident occurring pre-petition and on injuries manifesting themselves post-petition—such a claim is not property of the estate because the injury, which is a requisite element of a personal injury cause of action, manifested itself only after the commencement of the bankruptcy case.

This analysis is consistent with the rationale of *Segal,* because no action that accrues post-petition can be "'sufficiently rooted in the pre-bankruptcy past'" of a debtor.  In re *Witko,* 374 F.3d 1040, 1043 (citing to *Segal*, 382 U.S. at 515).  As the Court of Appeals for the 11th Circuit correctly recognized, "[t]he Supreme Court did not allow the *Segal* trustee to assert more rights than the debtor had at the commencement of the case; it merely allowed the trustee to seek the interests existing, though still undetermined in quantity, at the time the debtor filed his petition."  *Id*. At 1043.   This analysis is also consistent with Second Circuit authority and section 541.  *See Bell v. Bell (In re Bell)*, 225 F.3d 203, 215 (2d Cir. 2000) ("Unlike pre-petition claims, claims which accrue to the debtor post-petition generally will not adhere to the estate and remain actionable by the debtor . . . property acquired post-petition by the debtor does not enter the estate; it remains the separate property of the debtor."); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir.1995) ("Whether the rights belong to the debtor . . . is a question of state law."); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 119 (2d Cir.1991) (explaining that a in order to determine whether a cause of action belongs to the bankruptcy estate, the court normally would determine whether the claim in question is able to withstand a motion to dismiss).  The Chapter 7 trustee, standing in the debtor's shoes, can maintain only those actions that the debtor could have *brought* prior to or when she filed her bankruptcy petition.  *See Hirsch*, 72 F.3d at 1093.

The Trustee cites to *In re Salander*, 450 B.R. 37 (Bankr S.D.N.Y. 2011), *In re Osborne*, 490 B.R. 75 (Bankr. S.D.N.Y. 2013) and *Stanley v. Community Bank, N.A.*, No. 8:08-CV-925 (GLS/RFT), 2009 WL 261333 (N.D.N.Y. Feb. 4, 2009) in support of his assertion that a claim need not have accrued prepetition in order to become property of a debtor's estate. *In re Salander* is factually distinguishable from the facts of this case. In *Salander*, a debtor sought to pursue a forgery claim against one of her creditors after the bankruptcy case was closed, and the Bankruptcy Court found that the claim was property of the estate despite the fact that her knowledge of the forgery was not clearly established prepetition. The Bankruptcy Court found that the claim was sufficiently rooted in the debtor's prepetition past, regardless of when she actually discovered the forgery. Because a claim of forgery required imputed, not actual discovery, the Bankruptcy Court put little emphasis on this element. *Id.* at *46.    In our case, there is no injury and no knowledge of wrongdoing, and these missing elements would not meet the standard adopted in *Salander*. To the extent that the *Salander* Court determined that all of the elements need not have accrued prepetition, the Court respectfully disagrees for the reasons outlined above.

Similarly, *Stanley v. Community Bank, N.A.* involved a debtor who brought a lawsuit against several banks based on allegations that the banks were complicit with her husband's fraud and forgery, which occurred prepetition.  The debtor claimed to have discovered the misconduct post-petition, and the Bankruptcy Court concluded that the debtor's knowledge, whether prepetition or post-petition, would not affect the status of the claim as one belonging to her estate. *Id.* at *3.  As in *Salander*, knowledge could be actual or imputed, and there is no indication that the Court in *Salander* would find that despite the lack of injury and damages prepetition, the Debtor's right to the settlement proceeds is sufficiently rooted in her prepetition past to render it property of her bankruptcy estate.  Finally, *In re Osborne* involved repeat filers who did not

disclose a multi-million dollar malpractice suit against the debtors' former bankruptcy attorneys. The Court in *Osborne* does not discuss the elements of the malpractice suit, other than to state that although a cause of action must have existed at the time of filing, all of the elements need not have accrued under applicable law. *Id.*, 490 B.R. at 83. To the extent *Osborne* stands for the proposition that accrual of a cause of action can be differentiated from the existence of a cause of action, the Court declines to follow *Osborne*.

### *Analysis*

Because section 541(a)(1) dictates that property of the estate includes "all legal or equitable interests of the debtor" that exist "as of the commencement of the case," the question is generally temporal: when did the debtor acquire a legal interest in the settlement proceeds?  In this case, the only events that took place pre-petition were the implant and removal of the Device.  Did implanting the Device, standing alone, vest rights in the Debtor to receive the settlement proceeds as of the Petition Date?

Under New York law, a tort claim does not accrue until the debtor sustains an injury as a result of the complained of act or omission.  *Berkshire Life Ins. Co. of Am. v. Ochs*, No. 06CV0657DRHWDW, 2009 WL 799956, at *4 (E.D.N.Y. Mar. 24, 2009) (explaining that "a tort cause of action cannot accrue until an injury is sustained").  So long as the required element of injury is hypothetical, the debtor has no legally cognizable cause of action, and thus has no property interest and any asserted claim would be subject to dismissal as unripe for adjudication.

While there is no dispute that the Device was implanted and removed prepetition, the record is barren of any evidence that she suffered any injury prepetition.  Mere removal of the Device does not, standing alone, imply that removal is the product of an injury.  In fact, the Debtor's affidavit suggests that she first learned that she may have a claim post-petition as a result

11

Case 2:16-cv-02071-JFB   Document 1-1   Filed 04/26/16   Page 38 of 49 PageID #: 39

of viewing a television advertisement.  In order to have an interest in a tort cause of action under New York law, "injury" requires more than mere exposure to a defective product.  *Gilks v. Olay Co., Inc.*, 30 F. Supp.2d 438, 443 (S.D.N.Y. 1998).

Even of the Court were to consider a claim based on failure to warn, no such claim had accrued as of the Petition Date.  In order to maintain a failure to warn claim under New York law, a claimant must show "(1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses which it knew or should have known; and (3) that failure to do so was the proximate cause of harm."  *Colon ex. Re. Molina v. BIC USA, Inc.*, 199 F. Supp.2d 53, 84 (S.D.N.Y. 2001). Because there was no harm to the Debtor prepetition, a failure to warn claim did not exist.

 If the Court were to adopt the Trustee's analysis, pre-petition exposure, without more, would be sufficient to create a pre-petition "legal or equitable interest."  Such analysis would expand property of the estate to include any interest so long as a trustee can tie such interest to a debtor's "pre-bankruptcy past" and would transform section 341 meetings of creditors into health examinations.  Opportunistic trustees would be scrambling to latch onto every possible claim that may someday arise, however attenuated.

One aspect of the Trustee's argument that  Court agrees with is that a *debtor's* lack of knowledge—distinct from the medical community's knowledge—of a cause of action is irrelevant for the purpose of determining ownership in a bankruptcy proceeding.  The proposition that a debtor's knowledge is required conflates the principles underlying discovery rules, statutes of limitation, and accrual of causes of action.  *See generally State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 796 (5th Cir. 1997).  Setting the clock in motion—vis-à-vis triggering the statute of limitations—is influenced by concepts such as the discovery rule under which the statute

of limitations is tolled until an injured party "discovers" or should have discovered an injury. Put differently, statutes of limitation often begin to run on a date other than the date on which the cause of action accrued. However, if a debtor is not aware of any injury, and there is no recognition in the medical community that a product used by a debtor pre-petition could be harmful, there is no prepetition cause of action to which a trustee can claim for the benefit of the estate.

*Substance of the Settlement*

Finally, the settlement proceeds are not generated from the Debtor's commencement of an adversary proceeding against a defendant. Intuitively, willingness to pay the Debtor arguably implies that a cause of action accrued. This, however, fails to account for the substance of the settlement. The settlement in this case requires the Debtor would release all possible claims, present and future regarding the Device. In other words, the Debtor would promise not to sue, regardless of whether the Debtor presently has or ever will have a claim. *See Blacks Law Dictionary* (10th ed. 2014) (defining "release" as "the act of giving up a right or claim to the person against whom it could have been enforced"). Assuming the Debtor was not injured as of the commencement of the case, as the record appears to indicate, the settlement proceeds are offered in exchange for the Debtor's pre-injury release to absolve others in advance of any liability and to transfer the risk of any such liability to the Debtor.

That the settlement proceeds were offered in connection with a class action—especially a class action for which the Debtor was not eligible—bolsters the foregoing. It is well established that releases and "settlement agreements are creatures of private contract law" and, in this case, the product of a "deliberate decision to bind themselves according to mutually agreed-upon terms without engaging in any substantive adjudication of the underlying causes of action." *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 312 (3d Cir. 2011). In an effort to avoid protracted present

and future litigation, class action defendants seek to "achieve 'global peace' by obtaining releases from all those who might wish to assert claims, *meritorious or not*," which is a "valid, and valuable incentive."  *Id.* at *310* (emphasis added).  The settlement policy is so important that those with meritless claims "barred under applicable state law" are generally included in classes to receive settlement proceeds.  *Id.* ("We need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action.").  In fact, the Second Circuit is one of a minority of circuits to approve settlements when a "court believes that [the underlying] claims may be *meritless*."  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243-44 (2d Cir. 2012) (emphasis added).  Contrary findings "would doom the class certification process from the outset" and those "ultimately excluded would no doubt go right back into court to continue to assert their claims," defeating the purpose of class action defendants obtaining an assurance that they have "extinguished every claim from every potential plaintiff."  *Id.*

14

Based on the evidence in the record, no cause of action had accrued as of the Petition Date, and therefore, the settlement proceeds do not constitute property of the Debtor's estate under the Bankruptcy Code and applicable case law.   Because reopening the case will serve no purpose, the Motion is denied.

## CONCLUSION

For the foregoing reasons, the Motion is denied.   An order consistent with this Memorandum Decision shall be entered forthwith.



**Dated: Central Islip, New York**
**April 14, 2016**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**

15

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Allan B. Mendelsohn, Former Trustee

**DEFENDANTS**

Barbara G. Ross, Former Debtor

**(b)** County of Residence of First Listed Plaintiff    Suffolk
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Suffolk
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

LaMonica Herbst & Maniscalco, LLP    Telephone: 516-826-6500
3305 Jerusalem Avenue
Wantagh, NY 11793

Attorneys *(If Known)*

Michael G. McAuliffe, Esq.    Telephone: 631-465-0044
68 South Service Road, Suite 100
Melville, NY 11747

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander   Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine   ☐ 368 Asbestos Personal Injury Product | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability   Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal   ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Injury   ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice   ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations   ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property |   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education   ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. section 158 (a)

Brief description of cause:
Appeal from Memorandum Decision dated April 14, 2016

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
04/25/2016

SIGNATURE OF ATTORNEY OF RECORD
s/ Holly R. Holecek

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

42

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration.  The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, Holly R. Holecek _____, counsel for Appellant Allan B. Mendelsohn _____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐    monetary damages sought are in excess of $150,000, exclusive of  interest and costs,

☐    the complaint seeks injunctive relief,

☒    the matter is otherwise ineligible for the following reason    Bankruptcy Appeal

### DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

N/A

### RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

### NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)    Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County: No _____

2.)    If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? _____

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? Yes _____

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? _____
(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

### BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.
☒    Yes          ☐    No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?
☐    Yes      (If yes, please explain)    ☒    No

I certify the accuracy of all information provided above.

**Signature:** s/ Holly R. Holecek _____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

                                         Chapter 7

BARBARA G. ROSS,                  Case No.: 04-87445 (REG)

                  Debtor.
--------------------------------------------------------X

## **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK     )
                            )ss:
COUNTY OF NASSAU     )

       ANGELA COLUCCI, being duly sworn, deposes and says:

       Deponent is not a party to the action, is over 18 years of age and resides in Nassau County, New York.

       On April 25, 2016, deponent served NOTICE OF APPEAL [Dkt. No. 41], EXHIBIT A TO NOTICE OF APPEAL [Dkt. No. 42] and CIVIL COVER SHEET [Dkt. No. 43] by first class mail upon the attorneys/parties listed on the annexed list at the addresses listed, said addresses designated for that purpose, by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service.

TO:   *See Service List Attached*

                                              *s/ Angela Colucci*
                                              Angela Colucci

Sworn to before me this
25th day of April 2106

*s/ Holly R. Holecek*
Holly R. Holecek
Notary Public, State of New York
No. 02H06317878
Qualified in Nassau County
Commission Expires January 12, 2019

## SERVICE LIST

Michael G McAuliffe, Esq.
68 South Service Road, Suite 100
Melville, New York 11747

Barbara G. Ross
150 Main Street, Unit 1D
Islip, New York 11747

United States Trustee
560 Federal Plaza
Central Islip, New York 11722

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
In re
Barbara G Ross                                    Case No. 8-04-87445-reg


                                  **Debtor**
---------------------------------------------------------x

## APPEAL DEFICIENCY NOTICE


**To:** Holly R. Holecek_____


The notice of appeal filed by you on ____**April 25, 2016**____ was deficient in the following respect(s):


[✓]   Civil Cover Sheet not submitted.

[ ]   No certificate of service as to Notice of Appeal – Forward either a Certificate of Service or
      sufficient copies of the notice of appeal and address labels for all parties to be served to permit
      the Clerk to comply with Bankruptcy Rule 8004.  **[EDNY LR 8004-1]**

[✓]   OTHER:   New Appeal form 417A._____
      _____
      _____



Date: **Central Islip, New York**                       **Robert A. Gavin, Jr.**
      **April 26, 2016**                                 **Clerk of Court**

                                          By: _s/  S Dolan_____
                                               Deputy Clerk

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207–8 | User: sdolan | Date Created: 4/26/2016 |
| Case: 8–04–87445–reg | Form ID: pdf000 | Total: 3 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| tr | Allan B. Mendelsohn | amendelsohn@amendelsohnlaw.com |
| aty | Holly R. Holecek | hrh@lhmlawfirm.com |

TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | |
|---|---|---|---|
| ust | United States Trustee | 560 Federal Plaza | Central Islip, NY 11722 |

TOTAL: 1

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------x
In re: Barbara G Ross

Case No. 8-04-87445-reg

Chapter 7

-------------------------------------------------x

**NOTICE TO PARTIES CONCERNING APPEAL** *(ECF CASE)*

A Notice of Appeal was filed in the above case by **Allan B. Mendelsohn**

**Appealing Document #40 Memorandum Decision**

on **April 25, 2016**                         .

Please observe the following, pursuant to Bankruptcy Rules 8001, 8004 and 8006, Local Rules 8004-1 and 8007-1, and established local practice in the Bankruptcy Court and District Court:

1.     *Service of Notice:* Unless the appellant has already served notice of the filing of the notice of appeal (as evidenced by a certificate of service), the appellant must provide the Clerk with the e-mail address of each party to be served; to the extent that there are parties to the appeal who are not equipped to receive e-mail notification, the appellant must provide the Clerk with sufficient copies of the notice and address labels for all such parties to be served.

2.     *Appellant's Designation:* Appellant's designation of record on appeal and statement of issues to be presented on appeal are due within fourteen (14) days of the date of filing the **later** of the following, as applicable: (a) the notice of appeal; (b) entry of an order granting leave to appeal; or (c) entry of an order disposing of the last timely motion outstanding of a type specified in Bankruptcy Rule 8002(b). A copy of the designation and statement shall be served by the appellant on the appellee.

3.     *Appellee's Designation:* Within fourteen (14) days after service of the appellant's designation and statement, the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal.

4.     *Copy of Record:* Each party who has filed a designation must provide this office with a copy of the items designated in PDF format. The designated items may be submitted as attachments to the designation, or separately at a later date, if necessary.

5.     *Transcripts:* If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall, immediately after filing the designation, deliver to the reporter and file with the clerk a written request for the transcript and make satisfactory arrangements for payment of its cost. Designated transcripts must be provided to this office in PDF format.

6.     *ECF Registration:* Documents must be filed electronically relative to this matter, both in the Bankruptcy Court and, once the record has been transmitted, in the District Court. Registration is required at both Courts. For information on ECF registration in the Bankruptcy Court, visit **www.nyeb.uscourts.gov/cm_ecf.htm**; for District Court information, visit **www.nyed.uscourts.gov/CM_ECF/cm_ecf.htm**.

It is the duty of the parties to insure that the record on appeal is complete. An incomplete record will otherwise be transmitted, for disposal as the District Court shall determine.  The deadline for transmission of the record will be set for thirty (30) days from the filing with the Court of the appellant's designation of record, or from the deadline for the said filing, whichever is earlier.

Dated: **Central Islip, New York 1172**
          **April 26, 2016**

                                              **FOR THE COURT**

                                              s/ S Dolan

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207–8 | User: sdolan | Date Created: 4/26/2016 |
| Case: 8–04–87445–reg | Form ID: pdf000 | Total: 6 |

**Recipients of Notice of Electronic Filing:**
tr        Allan B. Mendelsohn          amendelsohn@amendelsohnlaw.com
aty       Holly R. Holecek          hrh@lhmlawfirm.com
aty       Michael G McAuliffe          mgmlaw@optonline.net

                                                                TOTAL: 3

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db        Barbara G Ross          150 Main Street        Unit 1D        Islip, NY 11751
ust       United States Trustee          560 Federal Plaza        Central Islip, NY 11722
          United States Trustee          560 Federal Plaza        Central Islip, NY 11722

                                                                TOTAL: 3