# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 16-CV-2071 (JFB)
_____

ALLAN B. MENDELSOHN, AS FORMER CHAPTER 7 TRUSTEE OF THE ESTATE OF BARBARA G. ROSS,

Appellant,

VERSUS

BARBARA G. ROSS,

Appellee.
_____

**MEMORANDUM AND ORDER**
May 9, 2017
_____

JOSEPH F. BIANCO, District Judge:

Pending before the Court is an appeal by Allan B. Mendelsohn, as Former Chapter 7 Trustee of the Estate of Barbara G. Ross ("appellant") from the April 14, 2016 Order of the Honorable Robert E. Grossman, United States Bankruptcy Judge (the "Bankruptcy Order"), denying the motion of appellant to reopen the Chapter 7 proceeding of debtor Barbara G. Ross ("appellee") to administer certain valuable property of the estate. (ECF No. 1.) At issue in the appeal is whether, under 11 U.S.C. § 541 ("§ 541"), the Bankruptcy Court erred by finding that certain settlement proceeds did not constitute property of appellee's estate because no cause of action had accrued as of the date appellee filed her bankruptcy petition.

For the reasons set forth below, the Court affirms the April 14, 2016 Order and denies the appeal.

## I. BACKGROUND

The following facts and procedural history are relevant to the instant appeal.

### A. The Bankruptcy Court Proceedings

Appellee filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 23, 2004. (R.[1] at 5.) She did not schedule an interest in a product liability claim or a personal injury claim on her voluntary petition or schedules. (*See id.* at 8-26.)

By order dated July 22, 2005, the Bankruptcy Court approved a stipulation of

---

[1] "R." refers to the Bankruptcy Record on Appeal. (ECF No. 2-2.)

1

settlement between appellant and appellee with respect to appellant's claims in the appellee's real property located at 150 Main Street, Unit 1D, Islip, New York 11751. (*Id.* at 60-61.) The funds from this settlement were distributed to appellee's creditors. (*Id.* at 63-65.) The general unsecured claims of appellee's estate totaled $49,626.13, and general unsecured creditors received a *pro rata* distribution of approximately 23% on account of their allowed claims. (*Id.*) By order dated March 22, 2005, appellee received a discharge. (*Id.* at 143.) The bankruptcy proceeding was closed as an "Asset" case by Final Decree issued on August 2, 2006. (*Id.* at 141.)

By motion dated September 30, 2015, appellant sought the entry of an order reopening the bankruptcy proceeding to administer an undisclosed asset, namely, a product liability claim for personal injuries sustained by appellee that resulted from a pre-petition medical procedure involving the implantation of a defective medical device. (*Id.* at 143-44.) Appellee objected to the motion, arguing that the cause of action arose post-petition. (*Id.* at 148.) In particular, appellee stated that she underwent a surgery whereby the medical device at issue—a mesh pelvic sling (the "medical device")—was implanted in 1999. (*Id.* at 150.) On July 13, 2011 (nearly five years after the bankruptcy proceeding was closed), the FDA issued an advisory opinion regarding possible defects with the medical device. (*Id.*) In 2012, appellee became aware of the possible defects, and contacted a product liability counsel with respect to asserting a claim in connection with those defects. (*Id.*) Appellee subsequently asserted a product liability claim, which resulted in a settlement award in the amount of $105,172.26 (the "settlement proceeds"). (*Id.* at 169.)

Appellee argued that, based on these facts, a cause of action unquestionably arose not only post-petition, but "five years *after* the [bankruptcy proceeding] was closed," thus making it impossible that the settlement proceeds were property of the estate involved in the bankruptcy proceeding. (*Id.* at 150.) In response, appellant argued that when debtor became aware of her claim is irrelevant, and that, because the settlement proceeds arose solely out of pre-petition conduct, they were sufficiently rooted in appellee's pre-bankruptcy past to be considered property of her estate. (*Id.* at 167.)

A hearing on the motion to reopen was conducted on February 3, 2016. By the Bankruptcy Order at issue in the instant action, the Bankruptcy Court denied appellant's motion to reopen. (*Id.* at 197.) The court determined that no cause of action had accrued as of the petition date, and, therefore, the settlement proceeds did not constitute property of appellee's estate. (*Id.* at 197.) Specifically, the court reasoned that, in assessing whether potential tort claims constitute property of a debtor's estate, "the proper focus is on whether there was a viable cause of action the Debtor could bring under applicable law on the date the petition was filed." (*Id.* at 184.) In such cases, the court continued, "regardless of what the Debtor knew, [] that cause of action and all its proceeds would constitute property of the estate." (*Id.*) If, on the other, "no cause of action had matured, it is irrelevant whether the Debtor ultimately develops an injury: the cause of action resulting from that injury would not be property of the estate." (*Id.*)

B. The Appeal

Appellant filed a Notice of Appeal of the Bankruptcy Order on April 25, 2016. (ECF No. 1.) The Notice of Bankruptcy Record Received was filed on June 14, 2016. (ECF No. 2.) Appellant filed his brief in support

of his appeal ("Appellant Br.") on August 16, 2016. (ECF No. 4.) Appellee filed her opposition ("Appellee Br.") on September 15, 2016. (ECF No. 6.) Appellant did not file a reply brief. The Court has fully considered the parties' submissions.

II. STANDARD OF REVIEW

This Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). Part VIII of the Federal Rules of Bankruptcy Procedure outlines the procedure governing such appeals. Fed. R. Bankr. P. 8001. The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007).

III. DISCUSSION

Appellant argues that vacatur of the Bankruptcy Order and remand to the Bankruptcy Court is warranted because the court incorrectly concluded that the settlement proceeds were not property of appellee's bankruptcy estate. For the following reasons, having conducted a *de novo* review, the Court disagrees and affirms the decision of the Bankruptcy Court.

A. Applicable Law

A bankruptcy estate is created upon the filing of a Chapter 7 bankruptcy petition. Section 541 of the Bankruptcy Code provides that the bankruptcy estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *cited with approval*, *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008). There is a "broad and liberal construction of the term 'property' that has been adopted with a view to securing for creditors everything of value belonging to the bankrupt . . . ." *In re Robbins Converting Corp.*, 441 F.2d 1096, 1098 (2d Cir. 1971); *see also In re Prudential Lines, Inc.*, 928 F.2d 565, 573 (2d Cir. 1991) (finding decision that property at issue was property of bankruptcy estate was "consistent with Congress' intention to bring anything into the estate" (citation omitted)); *In re Kokoszka*, 479 F.2d 990, 994-95 (2d Cir. 1973) (acknowledging "a very narrow exception to the general proposition that everything of value passes to the trustee" exists with respect to "weekly or other periodic income required by a wage earner for his basic support").

Interests under § 541 include "causes of action possessed by the debtor at the time of filing." *Jackson v. Novak*, 593 F.3d 171, 176 (2d Cir. 2010); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983). To determine whether a cause of action was possessed by the debtor at the time of filing, courts must examine whether such claims had accrued at the time of filing. *See Osborne v. Tulis*, 594 Fed. App'x 39, 40 (2d Cir. 2015). Generally, "a right accrues when it comes into existence," *United States v. Lindsay*, 346 U.S. 568, 569 (1954)—*i.e.*, "when the plaintiff has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Aetna Life & Casualty Co. v. Nelson*, 67 N.Y.2d 169, 175 (N.Y. 1986). The law governing the accrual of such a claim naturally controls this analysis. *Osborne*, 594 Fed. App'x at 40. Here, the parties do not dispute that the

3

claim did not accrue pre-petition because appellee did not sustain an injury, as required in product liability claims.

There are exceptions to the rule that "[b]ecause assets within the estate are those that exist 'as of the commencement of the case,' property acquired by the debtor *after* the filing of a bankruptcy petition generally does not become part of the estate." *Chartschlaa*, 538 F.3d at 122; *see also Bell v. Bell*, 225 F.3d 203, 215 (2d Cir. 2000) ("Unlike pre-petition claims, claims which accrue to the debtor post-petition generally will not adhere to the estate and remain actionable by the debtor"). Where property, including legal claims, is acquired post-petition, courts must employ a different analysis, whereby "[p]ost-petition property will become property of the estate only if it is 'sufficiently rooted in the pre-bankruptcy past.'" *Id.* (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)). In *Segal*,[2] for example, the Supreme Court held that a post-petition tax refund premised on pre-petition losses is property of the estate. 382 U.S. at 378-79. The Court held that the facts in that case indicated that the "refund existed at the time the[] bankruptcy petitions were filed," and, as such, it constituted property of the bankruptcy estate. *Id.*

In the instant action, the Bankruptcy Court cited a framework derived from *Segal* and employed by other courts to determine whether the settlement proceeds were "sufficiently rooted in the pre-bankruptcy past." (*See* R. at 190; Appellee Br. 6.) Under that framework, courts

> (1) determine the extent to which the claim is rooted in the pre-bankruptcy past;
> (2) determine the extent to which it is entangled with the debtor's ability to make an unencumbered fresh start; and then (3) with both considerations in the balance, determine whether, in view of the purposes of the [Bankruptcy Code], the claim is more properly categorized as prepetition property that should come into the estate or a post-petition asset that the Debtor should take free of the claims of pre-bankruptcy creditors . . . .

*See In re Borchert*, No. 04-65653, 2010 WL 153384, at *2-3 (Bankr. N.D.N.Y. Jan. 8, 2010); *Riccitelli v. Grasso*, 320 B.R. 483, 490-91 (Bankr. D. Mass. 2005).[3]

The Second Circuit has also addressed this issue. For example, in *Chartschlaa*, the issue was whether debtor's post-petition lawsuit concerning a contract formed by a company that debtor began organizing pre-petition, but did not formally incorporate until post-petition, was property of his bankruptcy estate. *Chartschlaa*, 538 F.3d at 119-20. The Second Circuit found the lawsuit was property of the bankruptcy estate, citing the following facts in support of its conclusion: the company was formed (unofficially) pre-petition; it was incorporated to simply change the name of debtor's preexisting company; debtor delayed formally incorporating the company until soon after filing for bankruptcy; debtor

---

[2] Segal involved an analysis of § 541's predecessor, but its analysis has consistently been applied to § 541. *See In re Prudential Lines, Inc.*, 928 F.2d at 571.

[3] The Bankruptcy Code was amended post-*Segal* to adopt the "sufficiently rooted in the pre-bankruptcy past" language, but it omitted the requirement that it not be entangled in the debtor's ability to make a fresh start. *See In re Richards*, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000). However, some courts still examine the "fresh start" factor in conducting analyses of property acquired post-petition.

4

should have disclosed the successor company to the bankruptcy trustee; the contract at issue—although it had been signed post-petition—was only signed at the debtor's request because the company's name had changed; and the contract had a retroactive effective date, making it "merely a continuation of [a] longstanding business relationship." *Id.* at 123. In including this last fact, the Second Circuit cited the *Bankruptcy Law Manual* for the proposition that "[i]t is important to distinguish between property that is acquired after the case is commenced and property that merely changes in form." *Id.* (citing Benjamin Weintraub & Alan N. Resnick, *Bankruptcy Law Manual* § 5:6 (5th ed. 2008)).

B. Analysis

The Bankruptcy Court's determination that the settlement proceeds do not constitute property of appellee's estate is a legal conclusion, and, thus, the Court reviews it *de novo*. *See In re Hyman*, 502 F.3d at 65.

As the Bankruptcy Court noted, this case presents a somewhat novel question in this Circuit: in a situation in which a debtor receives proceeds of a settlement where, because the underlying facts do not establish all the elements of the potential legal basis for suit, she may not ever be able to successfully bring suit, how does a court determine whether those settlement proceeds are the property of the debtor's bankruptcy estate? The typical inquiry made of legal claims—*i.e.*, whether a "cause[] of action [was] possessed by the debtor at the time of filing," *Jackson*, 593 F.3d at 176—cannot apply to such situations. Thus, courts must conduct an analysis of the exception to the general rule that "property acquired by the debtor *after* the filing of a bankruptcy petition [] does not become part of the estate." *Chartschlaa*, 538 F.3d at 122. As noted above, under such an analysis, courts must utilize the inquiry set forth in *Segal* and its progeny—*i.e.*, whether the "[p]ost-petition property . . . is 'sufficiently rooted in the pre-bankruptcy past.'" *Id.* (quoting *Segal*, 382 U.S. at 380).

Here, the Bankruptcy Court properly cited this line of cases in its Order. However, it failed to actually conduct this portion of the analysis. The court incorrectly noted that, in cases such as the instant action, "the proper focus is on whether there was a viable cause of action the Debtor could bring under applicable law on the date the petition was filed." (R. at 184.) The court then determined that, "[b]ecause the elements necessary to commence an action under state law were not present as of the date of the petition, the right to receive the settlement proceeds are not sufficiently rooted in the Debtor's prepetition past to warrant inclusion of the settlement proceeds in the Debtor's bankruptcy estate." (*Id.* at 2.) In so holding, the court conflated the inquiry of when a claim accrues with the additional *Segal* inquiry.

In particular, the analysis does not comport with *Segal*'s holding, applied in numerous Second Circuit cases, that property that is acquired post-petition *can* be deemed to be the property of a bankruptcy estate, so long as it is "sufficiently rooted in the pre-bankruptcy past" of a debtor. The court failed to specifically analyze whether, despite the fact that a claim had not accrued under state law as of the petition date, the settlement proceeds were nonetheless "sufficiently rooted in the pre-bankruptcy past" of appellee that they should be considered part of her bankruptcy estate.[4]

---

[4] The court incorrectly relied on *In re Witko*, 374 F.3d 1040 (11th Cir. 2004), for the proposition that "no action that accrues post-petition can be 'sufficiently rooted in the pre-bankruptcy past' of a debtor" (R. at 191)—a statement that conflicts directly with *Segal*.

5

This Court recognizes, as the Second Circuit noted in *Bell*, that "claims that accrue to the debtor post-petition *generally* will not adhere to the estate and remain actionable by the debtor." 225 F.3d at 215. However, an analysis still must be conducted to determine whether an unaccrued claim is nonetheless sufficiently rooted in the pre-bankruptcy past. Indeed, some courts have found that such claims that had not accrued at the time the petition was filed were sufficiently rooted in the pre-bankruptcy past to constitute property of the bankruptcy estate. *See, e.g.*, *In re Sommer*, 2008 WL 704401 (Bankr. N.D. Ohio Mar. 14, 2008) (finding asbestos claim to be property of the bankruptcy estate because debtor's asbestos exposure, which led to his development of lung cancer, was prepetition and was the basis of the wrongful death claim).

Here, as the Bankruptcy Court noted, it was not inevitable that debtor's claim in the instant case would have *ever* accrued. (*See* R. at 193 ("So long as the required element of injury is hypothetical, the debtor has no legally cognizable cause of action, and thus has no property interest and any asserted claim would be subject to dismissal as unripe for adjudication.").) The court incorrectly concluded from this fact that the settlement proceeds could not be considered estate of the property, without conducting an inquiry pursuant to *Segal*.[5]

In explaining its reasoning, the Bankruptcy Court stated that

> settlement in this case requires [appellee to] release all possible claims, present and future regarding the Device. . . . Assuming the Debtor was not injured as of the commencement of the case, as the record appears to indicate, the settlement proceeds are offered in exchange for the Debtor's pre-injury release to absolve others in advance of any liability and to transfer the risk of any such liability to the Debtor.

(R. at 195.) The Bankruptcy Court found that these facts supported its decision, but this Court concludes that an additional analysis must be conducted. The fact that the settlement proceeds did not result from a viable claim, but instead were offered in exchange for pre-injury release, undermines the view that a § 541 analysis should be limited to whether a claim had accrued pre-petition. Instead, the appropriate inquiry is whether the facts underlying the settlement agreement were "sufficiently rooted in the

---

Contrary to the court's assertion, the court in *In re Witko* correctly noted that post-petition claims in *Segal were* the property of the bankruptcy estate because the "predicates for receiving the refunds . . . occurred pre-petition." *In re Witko*, 374 F.3d at 1043. The claim at issue in *In re Witko* was a medical malpractice claim, and the Eleventh Circuit determined that it could not be deemed property of the debtor's bankruptcy estate, in part, because one of the elements required to sustain the claim, namely, that the attorney's negligence proximately caused a loss to the client, was not present until after the bankruptcy petition was filed. *Id.* at 1043-44.

[5] This Court's interpretation of *Segal* is consistent with the "broad and liberal construction of the term 'property' that has been adopted with a view to securing for creditors everything of value belonging to the bankrupt." *In re Robbins Converting Corp.*, 441 F.2d at 1098; *In re Prudential Lines, Inc.*, 928 F.2d at 573 (finding decision that property at issue was property of bankruptcy estate was "consistent with Congress' intention to bring anything into the estate" (citation omitted)). In light of this expansive view, it would stray far from the purposes of the Bankruptcy Code and, relatedly, the Supreme Court's and Second Circuit's interpretations of § 541, to exclude this category of property from bankruptcy estates without requiring an analysis under *Segal*.

6

pre-bankruptcy past" of appellee. Other courts have reached a similar conclusion. *See, e.g.*, *Gaito v. A-C Product Liability Trust*, 542 B.R. 155 (Bankr. E.D. Pa. 2015) ("[A]ny new, post-petition interest (such as a legal claim) that is 'sufficiently rooted in the pre-bankruptcy past' can also constitute part of the debtor's bankruptcy estate." (citing *Segal*, 382 U.S. at 375)); *In re Sommer*, 2008 WL 704401, at *4 ("[T]he accrual of an action is not the determining factor for when the property interest arises for the purposes of defining property of the estate. Instead, bankruptcy courts look at whether there is a strong nexus between the action and prebankruptcy events."); *Mueller v. Hall*, 2007 WL 1376081, at *8 (B.A.P. 6th 2007) ("[T]he question in this case is not whether the malpractice claim accrued, based on the moment the last element of the cause of action accrued, prior to [debtor] filing bankruptcy, but whether the malpractice claim is sufficiently rooted in [debtor]'s prebankruptcy past to constitute property of the estate.").[6]

However, this Court has conducted this additional analysis and determines that the result reached by the Bankruptcy Court should be upheld because the interest at stake in the settlement agreement was not sufficiently rooted in appellee's pre-bankruptcy past.[7] Here, appellee's pre-bankruptcy past did not create an interest that manifested itself in the settlement agreement. Instead, it was the combination of an event that occurred in her pre-bankruptcy past (the implantation of the medical device) and certain post-bankruptcy events (the FDA issued an advisory opinion regarding possible defects with the medical device; appellee became aware of the possible defects) that created the interest that resulted in the settlement proceeds. Without the post-bankruptcy events, the pre-bankruptcy event would be rendered meaningless insofar as plaintiff's ability to obtain settlement proceeds is concerned. Thus, under the particular facts of this case, it simply cannot be said that her interest was "sufficiently rooted in the prebankruptcy past" to render the settlement proceeds property of the bankruptcy estate.

Although courts have not reached a uniform result in cases raising similar issues, a number of courts have reached results consistent with the one reached by this Court.[8] For example, in *In re Harber*, the Bankruptcy Court for the Western District of Pennsylvania applied the *Segal*-derived framework to proceeds a debtor might receive in a lawsuit related to a hip

---

[6] Some have gone so far as to eliminate the accrual inquiry from the § 541 analysis altogether. *See, e.g.*, *In re Richards*, 249 B.R. at 861 ("[I]n determining whether a claim is property of the bankruptcy estate, the test is not the date the claim accrues . . . . [T]he appropriate inquiry is whether the claim is 'sufficiently rooted in the prebankruptcy past.'"). In the absence of an indication from the Second Circuit that such a departure from existing case law is warranted, this Court declines to limit its inquiry in this way.

[7] Courts reviewing appeals of orders may affirm on other grounds. *See, e.g.*, *Davis v. New York*, 106 Fed. App'x 82, 83 (2d Cir. 2004); *Zarcone v. Perry*, 581 F.2d 1039, 1040 (2d Cir. 1978).

[8] The Fifth Circuit reached a similar result in *In re Burgess*, 438 F.3d 493 (5th Cir. 2006), where the court determined that a legislatively enacted, retroactive relief payment for a pre-petition crop disaster was not property of a bankruptcy estate because "it [was] the combination of [debtor's] crop loss and the enactment of the [legislation] that gave him [a legal interest in the disaster-relief payment." 438 F. 3d at 497. Thus, the debtor "did not have a prepetition claim to, or interest in, the disaster-relief payment because the legislation authorizing the payment had not yet been enacted." *Id.* at 499. However, in so holding, the court rejected the vitality of *Segal*, which is clearly at odds with recent and controlling Second Circuit precedent. Thus, while the Court agrees with the Fifth Circuit's result, it would have conducted the analysis using the *Segal* approach.

replacement that was filed pre-petition, dismissed without prejudice post-petition, and subsequently revived when she experienced an injury arising from the hip replacement. *Id.* The court there conducted an extensive analysis of § 541, *Segal*, and its progeny, and concluded that "[t]hrough *Segal*, the bankruptcy estate can retain value from claims that were predominantly rooted in the debtor's prepetition history but, as a matter of happenstance, did not fully accrue until after the petition date." *Id.* at 532. It determined that, "[u]ndoubtedly, [debtor's] Claim ha[d] 'roots' in [her] prepetition past," including that the hip replacement device was implanted seven years pre-petition, and that she had received "notice informing her of the *possibility* that the device could fail." *Id.* at 533. The court held, however, that "it is not enough that a claim be 'rooted' in the pre-bankruptcy past. It must be 'sufficiently rooted.'" *Id.* It then engaged in a fact-intensive analysis "to assess whether a substantial portion of the claim elements existed prepetition so that it would be inequitable to deprive the bankruptcy estate of this asset." *Id.* The court concluded that "the most critical elements of [debtor's] Claim had not taken root as of the time her bankruptcy was filed," including that she had not sustained an injury, had not incurred any damages, did not exhibit any symptoms pre-petition, and did not purposely delay any medical evaluation. *Id.* As such, the court determined that her claim was not property of the bankruptcy estate.

This Court concludes that the same conclusion applies here. Although appellee's interest in the settlement undoubtedly stems from pre-petition events, "the most critical element[]" that created her interest—the discovery that there was a defect with the medical device—did not occur until well after the petition date. Thus, her interest was not "substantially rooted" in her pre-bankruptcy past for purposes of § 541.

An examination of *Chartschlaa*, where, as noted, the Second Circuit determined property acquired post-petition was property of the bankruptcy estate, is instructive. The facts cited by the Second Circuit do not apply here, including the crucial point that the contract at issue there was "merely a continuation of [a] longstanding business relationship," rendering it "property that merely change[d] form," rather than "property that [wa]s acquired after the case [] commenced." 538 F.3d at 123. Here, on the other hand, appellee's interest in the settlement agreement to which she agreed cannot be said to have existed in any real sense pre-petition, let alone to have "merely change[d] form." As a result, the settlement proceeds in this case were plainly "acquired after the [bankruptcy proceeding was] commenced." *Id.*

IV. CONCLUSION

For the foregoing reasons, the Court affirms the April 14, 2016 Order of the Bankruptcy Court, and denies the appeal.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated:   May 9, 2017
         Central Islip, New York

\*\*\*

Appellant is represented by Holly R. Holecek and Salvatore LaMonica of LaMonica Herbst & Maniscalco, LLP, 3305 Jerusalem Avenue, Suite 201, Wantagh, NY 11793. Appellee is represented by Michael G. McAuliffe, 68 South Service Road, Suite 100, Melville, NY 11747.

8